UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                      :

LUIS GARCIA,
                                        :

               Plaintiff,             :         OPINION & ORDER

                                        :

           -against-              :        19 Civ. 3576 (GWG)

                                        :

ANDREW SAUL, Commissioner
of Social Security,                         :

                      Defendant.[1]      :
----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     Plaintiff Luis Garcia brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for supplemental security income ("SSI") under the Social Security Act (the "Act"). Garcia and the Commissioner both move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[2] For the reasons stated below, Garcia's motion is denied and the Commissioner's motion is granted.

I.  BACKGROUND

     A.  Procedural History

---

    [1] Andrew Saul, who became Commissioner of Social Security on June 17, 2019, is automatically substituted as defendant pursuant to Fed. R. Civ. P. 25(d).

    [2] See Plaintiff's Motion for Judgment on the Pleadings, filed Sept. 30, 2019 (Docket # 15) ("Plaintiff's Motion"); Plaintiff's Memorandum of Law, filed Sept. 30, 2019 (Docket # 16) ("Pl. Mem."); Notice of Motion, filed Nov. 27, 2019 (Docket # 19); Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, filed Nov. 27, 2019 (Docket # 20) ("Comm'r Mem."); Plaintiff's Reply to Defendant's Memorandum of Law in Support of the Commissioner's Decision, filed Dec. 23, 2019 (Docket # 21) ("Reply").

On February 5, 2016, Garcia filed an application for social security disability benefits with an alleged disability onset date of January 28, 2016.  See SSA Administrative Record, filed July 29, 2019 (Docket # 13) ("R.") at 119.  The Social Security Administration ("SSA") denied Garcia's application on April 20, 2016.  R. 131.  Garcia requested a hearing before an administrative law judge ("ALJ") to review the denial.  R. 143.  The hearing before the ALJ occurred on April 23, 2018.  R. 76.  In a written decision dated May 24, 2018, the ALJ found that Garcia was not disabled within the meaning of the Act.  R. 31-48.  On July 20, 2018, Garcia requested that the Appeals Council review the ALJ's decision.  R. 5.  The Appeals Council denied Garcia's request for review on February 22, 2019, making the ALJ's decision the final decision of the Commissioner.  R. 1-6.  Garcia filed this action on April 23, 2019.  See Complaint, filed April 23, 2019 (Docket # 1).  The instant motions followed.

B.  The Hearing Before the ALJ

The ALJ hearing occurred on April 23, 2018, before ALJ LeSandra Morrison.  R. 78. The ALJ and Vocational Expert ("VE") Haster, both appeared via teleconference from Topeka, Kansas.  Id.  Garcia and his counsel, William Aronin, appeared via teleconference from New York, New York.  Id.  Aronin gave an opening statement, in which he noted this was primarily "a psychiatric case," while also stating that Garcia does have "quite significant issues with his left arm" but that those issues would not "preclude sedentary work."  R. 80.  Aronin stated Garcia had severe post-traumatic stress disorder, had battled with homelessness, and currently lived in supportive housing with an assigned caseworker.  R. 80-81.  Aronin stated Garcia was receiving treatment at the Nathanial Clinic.  R. 81.

The ALJ proceeded to question Garcia.  Id.  In response to the ALJ's questioning, Garcia stated he was born on April 20, 1969, weighed 190 pounds, was right-handed, and was five-foot

2

seven-inches tall.  R. 80-81.  Garcia remembered going to school, and before his mother died she

told Garcia he made it to the 10th grade.  R. 83.  Garcia received food stamps and welfare, and

every two weeks he got "cash."  Id.

Garcia was next questioned by his attorney.  Id.  Garcia testified that he was on welfare

because "they told" him he "cannot work."  R. 84.  Garcia stated he lived in a home that dealt

with people with psychiatric problems and that he had a lot of problems he could not deal with

on his own.  Id.  Before living in that home, Garcia testified that he was homeless and lived on

the streets.  Id.  While on the streets, Garcia got into trouble and started wanting to hurt people.

R. 85.  He also stated that he has wanted to kill himself twice but indicated he did not want to be

asked questions about that.  Id.  Garcia saw a psychiatrist once a month, and also saw a therapist

named Hector.  R. 86.  Before Hector, Garcia saw a therapist named Alan Montes.  Id.  Garcia

had trouble remembering things and staying focused, and he lived with a residential caseworker.

R. 87.  The caseworker made Garcia take his medications, but the caseworker also told Garcia

his medication would be taken away if he continued to act up.  Id.  Garcia sometimes acted up by

yelling at people and he had a temper.  R. 88.  He previously used illegal drugs but stopped doing

drugs when his mother died in 2015.  R. 88-89.

At this point in the hearing, Garcia was abruptly excused from the hearing and the

hearing transcript indicates that an off-the-record discussion occurred.  R. 89.  When the record

was resumed, Garcia's attorney stated Garcia had a tantrum, punched the desk, and had mucus

coming out of his nose while he was crying.  R. 90.  Garcia's attorney also stated he wanted to

convey on the record that Garcia suffered visual hallucinations.  R. 91.

The ALJ next asked questions of the VE.  The ALJ asked the VE to

assume an individual of the claimant's age, education, and no past work go

3

further, [sic] assume that the individual would be able to perform the full range of
light work.  But, must avoid extreme cold, extreme heat, humidity, fumes, odors,
dusts greater than that found in a normal office environment, gases, and poor
ventilation.  Must further avoid unprotected heights, and unprotected moving
machinery.  First, I would like to have you assume that this individual is limited
to performing simple, routine tasks, with occasional interaction with co-workers.
No tandem job tasks.  And, work environment with little, if any change.
Occasional interaction with supervisors.  No interaction with the public.  Is the
[sic] work in the national economy this individual could perform?

R. 91-92.  The VE responded that such an individual could work in the national economy as a

bindery machine feeder, garment bagger, or blinking machine operator.  R. 92.  The ALJ asked if

a hypothetical individual who is going to be off task 15-to-20 percent of the day because of their

medical condition could maintain competitive employment, and the VE responded that such an

individual could not maintain competitive employment.  Id.  The ALJ next asked if a

hypothetical individual who was going to be absent from work, or leave work early, one-to-two

days a month could maintain competitive employment, and the ALJ responded that such an

individual could not maintain competitive employment.  Id.

    C.  The Medical Evidence

       The Commissioner and Garcia have both provided summaries of the medical evidence in

the record.  See Comm'r Mem. at 1-9; Pl. Mem. at 2-5.  The summaries are substantially

consistent with each other.  In any event, the Court directed the parties to specify any objections

they had to the opposing party's summary of the record and neither party has done so.  See

Scheduling Order, filed July 29, 2019 (Docket # 14) ¶ 5.  Accordingly, the Court adopts both

parties' summaries of the medical evidence as accurate and complete for purposes of the issues

raised in this suit.  We discuss the medical evidence pertinent to the adjudication of this case in

section III below.

D.  The ALJ's Decision

In her written decision, the ALJ summarized the five-step process for determining whether an individual is disabled under the Act.  R. 35-36.  At step one, the ALJ determined Garcia had not engaged in substantial gainful activity since his application date of February 5, 2016.  R. 36.  At step two, the ALJ determined Garcia had the severe impairments of post-traumatic stress disorder, diabetes mellitus, asthma, a distal biceps rupture with proximal retraction of the muscle belly of the left arm, and obesity.  Id.  At step three, the ALJ concluded Garcia did not have an impairment or combination of impairments that met or medically exceeded the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 37.  The ALJ considered listings 3.03 (Asthma) and 1.02 (Major dysfunction of a joint).  Id.

As for Garcia's diabetes, the ALJ considered the effects of Garcia's diabetes pursuant to SSR 15-2p and listing 9.00(B)(5)(a)(ii).  Id.  The ALJ stated there was no evidence that Garcia had diabetic peripheral neurovascular disease that led to gangrene and subsequent amputation of an extremity under listing 1.00, nor was there evidence that Garcia had diabetic retinopathy under listing 2.00.  Id.  There was no evidence Garcia had coronary artery disease or peripheral vascular disease under listing 4.00, or diabetic gastroparesis under listing 5.0.  Id.  There was also no evidence Garcia had poorly-healing-bacterial or fungal infections under listing 8.0; diabetic neuropathy under listing 11.00; or cognitive impairments, depression, or anxiety under listing 12.00.  Id.

Although obesity is not a listed impairment in Appendix 1, the ALJ considered Garcia's obesity pursuant to SSR 02-1p.  R. 38.  The ALJ stated she considered Garcia's obesity in reaching conclusions from step two to step five on the sequential disability evaluation process.

5

Id.

The ALJ determined that Garcia's mental impairments did not meet or medically exceed the listings in 12.04, 12.06, or 12.15.  Id.  The ALJ considered whether the "paragraph B" factors of those listings were satisfied.  Id.  Because the ALJ found Garcia did not have at least two marked limitations or one extreme limitation, the ALJ concluded the paragraph B criteria were not satisfied.  R. 39.  The ALJ determined that the paragraph C criteria were also not satisfied because Garcia did not show only a minimal capacity to adapt to changes in his environment or to demands that were not already part of his daily life; require training in daily living skills; require the use of a job coach; reside in a highly supportive living arrangement; or require assistance from mental health workers to meet physical needs.  Id.

Before proceeding to step four, the ALJ concluded Garcia had the residual functional capacity to perform light work except Garcia was inter alia, "limited to performing simple routine tasks in an environment with little, if any, change, and with occasional interaction with coworkers (no tandem job tasks) and supervisors, and no interaction with the general public."  R. 40.  In considering Garcia's testimony about his symptoms, the ALJ concluded Garcia's medically determinable impairments could reasonably be expected to cause his symptoms.  R. 41.  However, the ALJ concluded Garcia's statements regarding the intensity and severity of the symptoms were not consistent with the medical record.  Id.

The ALJ next stated her summary of the medical evidence.  Id.  A physical altercation in March 2013 caused an injury to Garcia's left arm, and there was evidence of a distal biceps rupture and proximal retraction of the muscle.  Id.  However, a January 2017 x-ray showed no fracture and Garcia had full range of motion and normal strength.  Id.  Garcia's treating physician noted that the injury was unlikely to be repaired and noted some pain on examination.

6

Id.  Consequently, the ALJ limited Garcia to work of a light exertional level.  Id.

Medical evidence supported a diagnosis of moderate persistent asthma without complication for Garcia.  Id.  Treating sources generally reported clear lungs and no acute distress, and the medical records showed that Garcia's asthma was generally controlled with medication.  Id.  However, Garcia reported an asthma attack and hospitalization to his therapist in April 2017.  R. 42.  Accordingly, the ALJ indicated Garcia should avoid exposure to extreme cold and extreme heat, as well as dust greater than found in a normal office environment.  Id.

Medical records showed Garcia had type II diabetes.  Id.  However, because the ALJ found there was no evidence Garcia's diabetes was not well controlled and because the diabetes was lacking complications, the ALJ concluded Garcia's diabetes would not prevent him from engaging in the light exertion work described in the RFC.  Id.  The ALJ also found Garcia's body mass index, which ranged from 29.75 to 34.41, did not prevent him from engaging in light exertion work.  Id.

Medical records showed initial treatment for Garcia's mental conditions began in 2015 when he received outpatient medication management and therapy while incarcerated.  Id.  In January 2016, Garcia began treatment at the Nathanial Clinic with his therapist Alan Montes and his psychiatrist Dr. James McKnight.  Id.  During that treatment, Garcia exhibited fair to moderate judgment and insight, and could manage the activities of daily living.  Id.

In March 2016, Dr. Thomas performed a consultative examination of Garcia.  R. 43.  Dr. Thomas noted a slightly dysphoric mood and affect; however, Garcia was fully oriented and demonstrated good insight and fair judgment.  Id.  Dr. Thomas diagnosed Garcia with major depressive disorder but found Garcia's prognosis was good because he had consistent engagement with psychological and psychiatric treatment.  Id.  The ALJ noted that Dr. Thomas

7

found Garcia was

> mildly limited in his ability to follow and understand simple directions and instructions and perform simple tasks independently, moderately limited in his ability to maintain attention and concentration, mildly limited in his ability to maintain a regular schedule, moderately limited in his ability to learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress. Dr. Thomas further stated that the claimant's psychiatric problems might significantly interfere with his ability to function on a daily basis.

R. 44-45. In September 2016, Garcia indicated a desire to see his therapist and psychiatrist less often because things were going well and he had "too many appointments." R. 43. In February 2017, Garcia indicated he wanted to begin seeing his therapist again to "improve his SSI application's viability." Id. In March 2018, Garcia reported that he felt good and Dr. McKnight noted he was stable in his medication regimen. Id.

In weighing the opinion evidence, the ALJ gave some weight to the March 2016 opinion of psychiatric consultative examiner Dr. Thomas. R. 44-45. However, the ALJ found that subsequent mental evaluations and Garcia's reported activities of daily living did not support the level of limitation that was suggested by Dr. Thomas. R. 45. The ALJ gave significant weight to the opinion of Alan Montes, Garcia's therapist, because Montes had continued to treat Garcia on a regular basis since January 2016. Id. However, the ALJ noted Montes was not an acceptable medical source. Id. Little weight was given to the opinion of Dr. McKnight because that opinion did not indicate Garcia's ability to perform and sustain work. Id. The ALJ gave limited weight to the January 2017 opinion of Dr. Compito, which indicated Garcia would be unable to perform jobs that required heavy lifting. Id. The ALJ noted that while the opinion provided no function-by-function analysis of Garcia's abilities, it was consistent with the ALJ's residual functional capacity assessment. R. 45-46. Little weight was given to the opinion of Garcia's

8

case manager, Unique. Scott.  R. 46.  The ALJ noted Scott's statements were lay opinions from a

non-medical source and were inconsistent with the medical findings as well as Garcia's own

allegations.  Id.

At step four, the ALJ concluded Garcia had no past relevant work.  Id.  At step five, the

ALJ concluded Garcia would be able to work in positions including bindery machine feeder,

garment bagger, and linking machine operator, and that such positions existed in sufficient

numbers in the national economy to conclude that Garcia was not disabled, as that term is

defined in the Act.  R. 46-47.

## II.  GOVERNING STANDARDS OF LAW

### A.  Scope of Judicial Review Under 42 U.S.C. § 405(g)

It is not a reviewing court's function "to determine de novo whether [a claimant] is

disabled."  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation

marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).  Rather,

a court reviewing a final decision by the Commissioner "is limited to determining whether the

[Commissioner's] conclusions were supported by substantial evidence in the record and were

based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per

curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370,

374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive . . . .").  Substantial evidence is "'more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson

v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229

(1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008);

Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).  The "threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).  The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam).  "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations and internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citation and internal quotation marks omitted).

B. Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see id.

10

§ 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that their "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience.  See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  Fourth, if the claimant's

11

impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. <u>DISCUSSION</u>

Garcia argues (1) that this case was adjudicated by an unconstitutionally-appointed ALJ and must be remanded for a new hearing before a different ALJ, Pl. Mem. at 11-13; Reply at 4-6, and (2) that the ALJ's RFC determination is not supported by substantial evidence, Pl. Mem. at 7-10; Reply at 1-3.

A. <u>The Appointments Clause and Waiver</u>

Garcia argues that the ALJ who presided over is case was an "inferior officer" who was not constitutionally appointed. Pl. Mem. at 11. Garcia cites to Lucia v. SEC, 138 S. Ct. 2044 (2018), which held that ALJs employed by the SEC are inferior officers who can be appointed only by "the President, a court of law, or a head of department." Lucia, 138 S. Ct. at 2051 (citing U.S Constitution Art. II, § 2, cl. 2). Garcia argues that because "only staff members of" the SSA give the ALJ his or her position, the ALJ "has unconstitutionally assumed their position," and "a

valid challenge under the Appointments Clause exists."  Pl. Mem. at 11.  The Commissioner

does not contest "that SSA ALJs are employees rather than inferior officers."  Comm'r Mem. at

22 n.2.  Rather, the Commissioner argues that Garcia forfeited this claim by failing to raise it

before either the ALJ or the Appeals Council.  Id. at 21-28.

  In the case of Bonilla-Bukhari v. Berryhill, 357 F. Supp. 3d 341, 350 (S.D.N.Y. 2019),

this Court addressed the same issue raised by Garcia here.  For the reasons we stated in that case,

we reject this challenge on the ground that it was never raised either before the ALJ or the

Appeals Council.  We note that since the issuing of Bonilla-Bukhari, two Circuit Courts of

Appeals have reached the same result, see Davis v. Saul, 963 F.3d 790, 795 (8th Cir. 2020); Carr

v. Comm'r, SSA, 961 F.3d 1267, 1275 (10th Cir. 2020), and one Circuit Court of Appeals has

reached the opposite result, see Cirko v. Comm'r of Soc. Sec., 948 F.3d 148, 159 (3d Cir. 2020).

  B.  The ALJ's RFC Determination

  Garcia takes issue with both the mental and physical limitations of the ALJ's RFC

determination.  We address these next.

   1.  Physical Limitations

  The ALJ properly evaluated the evidence in arriving at the RFC determination that

Garcia could perform light work as defined in 20 C.F.R. § 416.967(b) with the limitation that

Garcia would be "lifting no more than 20 pounds occasionally" and that he "should also avoid

unprotected heights and moving machinery."  R. 41.[3]  In reaching this conclusion, the ALJ

---

[3]  The regulations define "light work" as follows

Light work involves lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds.  Even though the weight lifted
may be very little, a job is in this category when it requires a good deal of walking
or standing, or when it involves sitting most of the time with some pushing and
pulling of arm or leg controls.  To be considered capable of performing a full or

considered medical records from January 27, 2017, in which Dr. Compito indicated that Garcia had experienced pain after a physical altercation on March 14, 2013, and that Garcia could not pick up "heavy" objects without specifying the weight.  See R. 442, 532.  The ALJ gave Dr. Compito's opinion limited weight because it was not a function-by-function assessment of Garcia's capabilities, and because the opinion was not consistent with other medical evidence. R. 45.  Nonetheless, the restriction on not being able to lift "heavy" objects articulated by Dr. Compito is consistent with "light work."  See Michael V. v. Comm'r of Soc. Sec., 2019 WL 4276722, at *5 n.3 (N.D.N.Y. Sept. 10, 2019) ("Courts have held that 'moderate' lifting or carrying limitations are consistent with RFC limitations to light work."); Puckett v. Berryhill, 2018 WL 6625095, at *17 (S.D.N.Y. July 13, 2018) (finding that claimant "would be restricted in his ability to climb, push, pull, and carry 'heavy' objects" is "consistent with an RFC of light work.") (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)).

Garcia argues that establishing a physical RFC based on Dr. Compito's physical examination alone constitutes failure by the ALJ to develop the record.  Pl. Mem. at 9-10.[4]  But Garcia points to no other medical records suggesting any limitations that would preclude light work.  To the contrary, evidence in the record further supports the finding that Garcia could do light work.  To start, a physical examination in January 2016 found that Garcia was "5/5" with respect to upper and lower extremities — that is, including the left arm.  R. 369.  It also found that there was no "muscle/joint pain stiffness back pain" and his gait was "steady."  Id.  One

wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

[4]  This argument is at odds with the statement of Garcia's representative at the hearing that Garcia's left arm issues would not "preclude sedentary work, perhaps maybe light."  R.80

month later, in February 2016, Garcia did not report any left arm concerns when relaying his medical history to social-work intern Brinley Kaston.  R. 411-12.  Nor did Garcia report arm issues during an evaluation by Dr. McKnight earlier in 2016.  R. 472.  In March 2016, Garcia informed Dr. Thomas that he was able to go grocery shopping and "spends the day going to the gym."  R. 420.  An x-ray taken during the January 27, 2017, examination of Garcia indicated there was no joint effusion or acute fracture of Garcia's elbow.  R. 532.

All of these medical findings constitute substantial evidence to support an RFC of light work.  See Lewis v. Colvin, 548 F. App'x 675, 677-78 (2d Cir. 2013) (summary order) (RFC for light work was supported by treatment records, evidence of claimant's daily activities, and consultative examiner's direction that claimant should avoid "heavy lifting, and carrying"); Mancuso v. Astrue, 361 F. App'x 176, 178 (2d Cir. 2010) ("The ALJ's . . . RFC to perform light work was supported by objective evidence of physical examinations at which physicians reported Mancuso's full range of motion and strength in her upper and lower extremities, ability to walk without difficulty, and lack of muscle atrophy.").  Further, in light of the substantial evidence to support the physical aspects of the RFC determination, the ALJ did not fail to develop the record. See Eusepi v. Colvin, 595 F. App'x 7, 9 (2d Cir. 2014) ("[T]he agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record.") (citing Rosa v. Callahan, 168 F.3d 72, 79 & n. 5 (2d Cir. 1999)).

2.  Mental Limitations

Garcia argues that the ALJ failed to reconcile the mental limitations contained in the RFC with the opinion of Garcia's therapist, Alan Montes.  Pl. Mem. at 7-9; Reply at 1-3.  First, Garcia contends the RFC did not take into account Montes's view that Garcia had limitations in his ability to follow work rules and function independently of others, as well as Montes's view

15

that Garcia was "seriously limited" in his ability to interact with co-workers and supervisors.  Pl. Mem. at 8.

Montes completed a "medical assessment of ability to do work related activities" form and checked boxes indicating that Garcia had "good" ability to function independently and follow work-related rules.  R. 512.  The assessment form defined "good" ability as "limited but satisfactory."  Id.  Montes also checked a box indicating Garcia had "fair" ability to interact with supervisors, deal with work stresses, and deal with the public.  Id.  "Fair" ability is defined by the form as "seriously limited, but not precluded."  Id.  Montes ultimately concluded in the written portion of his assessment that Garcia had "some anger/anxiety issues, but not to such point would limit work ability."  R. 513.

These determinations support the ALJ's RFC, which found Garcia could perform "simple routine tasks in an environment with little, if any, change, and with occasional interaction with coworkers (no tandem job tasks) and supervisors, and no interaction with the general public."  R. 40; see generally 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.  The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").  Nothing in Montes's assessment contradicts the ALJ's RFC.  Specifically, Montes's opinion that Garcia had a "fair ability" — consisting of "serious limitations" — to interact with supervisors, dealing with work stresses, and dealing with the public, is consistent with the RFC limitation that Garcia could occasionally interact with supervisors, but never interact with the public.  R. 40.  Garcia argues the ALJ was internally inconsistent in establishing the RFC because the ALJ permitted some interaction with co-workers and supervisors but no interaction

whatsoever with the public, while Montes indicated Garcia had serious limitations in all three of those activities.  Pl. Mem. at 8.  But it was not error for the ALJ to interpret Montes's opinions in the context of the entire medical record as supporting an RFC of no interaction with the public but occasional interaction with supervisors and co-workers.  An "ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [her] decision," rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).  Here, the ALJ's RFC assessment was consistent with the record as a whole.  See R. 127 (April 19, 2016, opinion from state agency psychological consultant Dr. Bhutwala that Garcia "retains the ability to perform the basic mental functions of unskilled work in a low contact environment."); R. 491 (June 3, 2016, treatment notes from Montes indicating "Garcia reports wanting to get involved in maintenance work or something else to keep himself occupied."); R. 497 (September 9, 2016, treatment notes from Montes stating "Garcia reports things have been going well for him lately and the only thing worrying him right now is his SSI."); R. 500 (December 9, 2016, treatment notes from Montes indicating "Patient is doing well.  He is calm and cooperative and tolerating his medication.  Patient denies any symptoms of depression or psychosis.").

We recognize that there is some evidence that Garcia's mental conditions could worsen at times.  See, e.g., R. 503 (February 10, 2017, treatment notes from Montes stating "Garcia reports getting more mood swings and getting angrier and more insomnia and feeling like the medication is not doing enough.  Mr. Garcia reports feeling more irritable and frustrated.").  However, the ALJ properly accounted for these reports by concluding that "to address any fluctuation of his symptoms, as well as any precipitating and aggravating factors, the undersigned finds that the

claimant should avoid tandem job tasks and have no interaction with the general public."  R. 44;
see also Colston v. Comm'r of Soc. Sec., 2018 WL 4520366, at *4 (M.D. Fla. Sept. 21, 2018)
("[T]he Court reject[ed] Plaintiff's argument that remand is necessary because the ALJ failed to
account for fluctuations in Plaintiff's symptoms" where ALJ found "Plaintiff was limited to low-
stress work with no high production demands, unskilled simple, routine, repetitive tasks with
simple instructions, and no interaction with the public and minimal contact with others.");
Mokbel-Aljahmi v. Comm'r of Soc. Sec., 2017 WL 9477655, at *8 (E.D. Mich. Aug. 11, 2017)
(rejecting argument "that the ALJ failed to consider the 'fluctuating nature of mental illness'"
where "the ALJ simply found that overall Plaintiff was not as limited as [medical source]
opined."), adopted by 2017 WL 4250475 (E.D. Mich. Sept. 26, 2017), aff'd, 732 F. App'x 395
(6th Cir. 2018).

Garcia also contends that the ALJ failed to adjust the RFC in light of Montes's
observations about Garcia's stress-handling abilities.  See Pl. Mem. at 8-9; Reply at 1-2.
However, Montes's observations about Garcia's ability to tolerate stress are factored into the
RFC calculation, which limits Garcia "to performing simple routine tasks in an environment with
little, if any, change."  R. 40.  Garcia argues that an RFC limiting a claimant to simple work tasks
does not explain a stress-based limitation.  But unlike the cases cited by Garcia, Pl. Mem. at 8-9,
the ALJ's "RFC assessment" in this case "reflects adequate consideration of Plaintiff's stress-
related limitations and is set forth 'with sufficient specificity to enable the court to decide
whether the determination is supported by substantial evidence.'"  See Hochstine v. Comm'r of
Soc. Sec., 2019 WL 5448287, at *7 (W.D.N.Y. Oct. 23, 2019) (quoting Ferraris v. Heckler, 728
F.2d 582, 587 (2d Cir. 1984)).

Here, Dr. Thomas opined that Garcia would have only moderate limitations in his ability

to "appropriately deal with stress."  R. 420.  Even Montes found that Garcia was "not precluded" from dealing with work stress.  R. 512.  And, of course, Montes found that Garcia's impairments were not so severe as to "limit work ability."  R. 513.  The specific stressors reported by Garcia to his treating sources do not even correspond to work situation stresses.  For example, Garcia reported to Montes in January 2016 that he was stressed about <u>not</u> being employed.  <u>See</u> R. 458. In June 2016, Garcia reported to Montes that he was stressed about his financial situation.  <u>See</u> R. 491.  Garcia also reported being stressed at times by new environments and crowds.  <u>See</u> R. 418 (Garcia "feels uncomfortable in crowds and will not get on a crowded train."); R. 487 ("Mr. Garcia reports still feeling anxious and restless around crowds of people."); R. 494 ("Mr. Garcia reports feeling stressed and isolating himself.").  None of this suggests that there would be stress just from being in the workplace.  Indeed, Garcia was recommended for permanent supportive housing because of his ability to "collaborate well with staff."  R. 410-12.

All this constitutes substantial evidence to support the RFC determination that Garcia could perform simple tasks in an environment with little change, occasional interaction with coworkers and supervisors, and no interaction with the public.  <u>See</u> <u>Moxham v. Comm'r of Soc. Sec.</u>, 2018 WL 1175210, at *10 (N.D.N.Y. Mar. 5, 2018) (limitation in RFC to "simple tasks and instructions, decisions on simple work-related matters, and frequent interaction with others" adequately accounted for plaintiff's stress-related limitations); <u>Scanlon v. Colvin</u>, 2016 WL 4944332, at *8 (W.D.N.Y. Sept. 16, 2016) ("On the basis of [ALJ's written assessment of the medical record], Plaintiff Scanlon's ability to perform simple work with occasional contact with others adequately reflects his limitations with regard to stress and is supported by the evidence of record.").  And the fact that the ALJ did not explicitly reference stress is of no consequence as a specific mention of every symptom is not required.  <u>See</u>, <u>e.g.</u>, <u>Figgins v. Berryhill</u>, 2017 WL

1184341, at *10 (W.D.N.Y. Mar. 29, 2017) ("The ALJ may not have mentioned stress explicitly,

but he implicitly incorporated the effects that stress would have on plaintiff in his RFC and the

questions he asked the VE.").  In sum, because the ALJ's stress-related limitations are supported

by substantial evidence in the record, and because "[i]t is ultimately Plaintiff's burden" — which

he has failed to meet — "to prove a more restrictive RFC than the RFC assessed by the ALJ,"

neither reversal nor remand is warranted here.  Lesanti v. Comm'r of Soc. Sec., 436 F. Supp. 3d

639, 650 (W.D.N.Y. Jan. 30, 2020); accord Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir.

2018).

IV.  CONCLUSION

   For the foregoing reasons, Garcia's motion for judgment on the pleadings (Docket # 15)

is denied and the Commissioner's cross-motion for judgment on the pleadings (Docket # 19) is

granted.  The Clerk is directed to enter judgment and close this case.

   SO ORDERED.

Dated: New York, New York
   August 17, 2020


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge